IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTOINE MILLER, | : |
| Petitioner, | : |
| v. | : Civ. Act. No. 17-1755-LPS |
| ROBERT MAY, Warden, and ATTORNEY GENERAL OF THE STATE OF DELAWARE, | : |
| Respondents.[1] | : |

## MEMORANDUM OPINION

Antoine Miller. *Pro so* Petitioner.

Katherine Joy Garrison, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

August 30, 2021
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to the case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

## I. INTRODUCTION

Pending before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Antoine Miller ("Petitioner"). (D.I. 2) The State filed an Answer in Opposition.[2] (D.I. 18) For the reasons discussed, the Court will dismiss the Petition.

## II. BACKGROUND

As summarized by the Delaware Supreme Court in the direct appeal of Petitioner's co-defendant Andrew Lloyd, the facts leading up to Petitioner's arrest and convictions are as follows:

> In January 2014, after a string of shootings in the region, the Wilmington Police Department and the FBI began investigating a heroin dealing ring in Wilmington, Delaware. Andrew Lloyd was one of the main subjects of the investigation. The Wilmington Police and the FBI also collaborated with the Delaware State Police and the U.S. Drug Enforcement Administration who were conducting a parallel investigation of Lloyd and one of his co-defendants, Jarrell Brown ("Jarrell").
>
> During the course of the investigation, Lloyd took part in many large-scale drug transactions, moving an average of 1,000-1,600 bundles of heroin per week. He operated primarily through his associates, having them package, pick up, and deliver the drugs. Lloyd used the homes of Lakenya Howard, Wanda Lloyd ("Wanda"), Jarrell, and others to store, package, and prepare heroin for distribution. Lloyd also used places and names associated with national political figures to identify the homes and his associates.
>
> On October 30, 2014, after months of surveillance and investigation, police obtained a search warrant and searched Lloyd's home and the homes of his many associates. They seized $12,932 and a car from Lloyd's home in Newark. They did not find drugs in Lloyd's home, but found them in his associates' homes. Police then arrested Lloyd and forty other individuals.

---

[2]Petitioner did not file a reply to the State's Answer, despite the Court granting his two requests for an extension of time to file a reply.

*Lloyd v. State*, 152 A.3d 1266, 1268–69 (Del. 2016). One of the homes police searched on October 30, 2014 was that of Petitioner and his wife. *See Miller v. State*, 154 A.3d 1124 (Table), 2017 WL 444843, at *2 (Del. Jan. 3, 2017). In the closet of their master bedroom, officers found 1,428 bags of heroin and thousands of dollars in cash. *Id.* Police also saw someone throw a gun on the roof of a neighboring residence, which they later recovered. *Id.*

Petitioner was arrested on October 30, 2014 and, thereafter, indicted on a number of racketeering and drug dealing related charges. (D.I. 16-3 at 1; D.I. 18 at 1) Prior to trial, Petitioner filed a motion to suppress evidence and a motion for a *Flowers*[3] hearing. (D.I. 17-1 at 109-15, 154-56) After a hearing, the Superior Court denied both motions. (D.I. 17-9 at 7-8, Entry Nos. 37, 42) On October 30, 2015, following a joint trial with co-defendant Andrew Lloyd, a Superior Court jury found Petitioner guilty of two counts of second degree conspiracy and one count each of tier 5 aggravated possession of heroin, possession of drug paraphernalia, and conspiracy to commit racketeering. *See Miller*, 2017 WL 444843, at *2. Petitioner filed a motion for judgment of acquittal on the aggravated possession of heroin charge, which the Superior Court denied. (D.I. 17 at 125-27, 135) On November 18, 2015, the Superior Court sentenced Petitioner as follows: (i) for conspiracy to commit racketeering, to twenty years at Level V incarceration; (ii) for aggravated possession of heroin, to twenty years at Level V, to be served concurrently; (iii) for second degree conspiracy, to two years at Level V, suspended for two years at Level IV (at Department of Correction discretion), suspended after six months for the balance to be served on Level III probation; (iv) for second degree conspiracy, to two years at Level V, suspended for two years at Level III probation; and (v) for possession of drug paraphernalia, to six months at Level V,

---

[3] *See Flowers v. State*, 316 A.2d 564, 568 (Del. Super. Ct. 1973) (discussing rules governing disclosure of confidential informant's identity).

suspended for six months at Level III probation. (D.I. 17-3 at 61-67) The Delaware Supreme Court affirmed Petitioner's convictions on January 31, 2017. *See Miller*, 2017 WL 444843 at *5.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that —
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

3

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In

4

order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see also Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and

5

convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

The Petition asserts the following four grounds for relief: (1) Petitioner's conviction violates the Fourth Amendment because the confidential informant's information was incorrect, unreliable, and "there was no connection between the drugs in [the] streets and coming from [the] residence searched" (D.I. 2 at 5); (2) the State presented insufficient evidence to prove that the substance found in Petitioner's house was heroin because the State did not perform any forensic tests on the substance (D.I. 2 at 7); (3) the State presented insufficient circumstantial evidence to prove that the substance in the bags was heroin and also to establish Petitioner was a co-conspirator (D.I. 2 at 8); and (4) the State presented insufficient evidence to prove racketeering and conspiracy because it did not establish that there was an "enterprise" (D.I. 2 at 10).

### A. Claim One: Fourth Amendment Violation

In his first Claim, Petitioner contends that the search of his residence violated the Fourth Amendment because the information from the confidential informant used in the probable cause affidavit attached to the search warrant was stale, not reliable, and did not provide a nexus between drug activity and his residence. (D.I. 2 at 5)

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for

suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, Petitioner filed a pre-trial motion to suppress the evidence at issue pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, and the Superior Court denied that motion after conducting a hearing. (D.I. 17-1 at 207-56; D.I. 17-4 at 8-9) Petitioner then challenged that decision in his direct appeal to the Delaware Supreme Court, presenting the same argument raised in the instant Petition. *See Miller*, 2017 WL 444843, at *1-4. The Delaware Supreme Court rejected Petitioner's argument as meritless and affirmed the Superior Court's judgment. *See id.* at *4.

This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts. The fact that Petitioner disagrees with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Petitioner's Fourth Amendment argument as barred by *Stone*.

### B. Claim Two: Insufficient Evidence of Possession of Heroin

In Claim Two, Petitioner asserts that the State did not establish his possession of heroin beyond a reasonable doubt because it did not present any forensic tests during the trial to prove that the substance found at his house was heroin. He also appears to argue that the State failed to

present sufficient circumstantial evidence at trial to prove the substance was heroin. (D.I. 2 at 8) Petitioner presented this argument to the Delaware Supreme Court on direct appeal, which denied the argument as meritless. Given these circumstances, Claim Two will only warrant habeas relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The United States Supreme Court precedent governing insufficient evidence claims is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *See id.*

Turning to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). The Delaware Supreme Court did not specifically apply *Jackson* and its progeny in holding that there was sufficient evidence to support Petitioner's conviction for possession. Nevertheless, the Delaware Supreme Court's decision was not contrary to *Jackson* because the Delaware case cited by the Delaware Supreme

8

Court refers to the applicable precedent. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (holding that Supreme Court of Pennsylvania's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated proper standard derived from U.S. Supreme Court precedent).

The Court's inquiry is not over, however, because it must also determine if the Delaware Supreme Court reasonably applied the *Jackson* standard to the facts of Petitioner's case. Petitioner's main complaint about the evidence surrounding his aggravated possession conviction is that the State did not provide any forensic test results during his trial to prove that the substance found at his residence actually was heroin. The Delaware Supreme Court rejected Petitioner's argument after concluding that the State presented sufficient circumstantial evidence for a rational trier of fact to find that Petitioner possessed more than five grams of heroin. In reaching this determination, the Delaware Supreme Court noted that "chemical testing is not necessary to support a conviction." *Miller*, 2017 WL 444843, at *4.

The Third Circuit has repeatedly held that "the government may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone." *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). To be convicted of aggravated possession of heroin in Delaware, the State must prove beyond a reasonable doubt that the person knowingly possessed five or more grams of heroin or a mixture containing heroin. In Petitioner's case, there was ample circumstantial evidence to prove beyond a reasonable doubt that he was guilty of aggravated possession of heroin. For instance, the State presented evidence and testimony that, when the police searched Petitioner's home, they found 1,428 bags of what appeared to be heroin packaged in bundles inside a backpack in the closet of Miller's and Pagan's bedroom. (D.I. 17 at 2-4, 10) The police also found cash totaling $2,333 inside an orange men's jacket hanging in the closet and in the pocket of a pair of pants. (D.I. 17 at 3, 10,

9

18, 45) Petitioner's ID was in the same pants pocket. (D.I. 17 at 10, 18) The suspected heroin was packaged in blue glassine bags contained in clear Zip-lock bags, and each was stamped in black ink with the words "El Che." (D.I. 17 at 10, 61; D.I. 17-2 at 194)

Steven Roscoe testified that he regularly bought 200 to 300 bundles of heroin from Andrew Lloyd in order to sell them. (D.I. 17-2 at 182-83) He testified that nobody ever told him that the heroin they received from him was not real. (D.I. 17-2 at 193) Roscoe stated that Lloyd usually packaged the heroin in 13 small plastic bags per bundle with blue wax paper in them. (*Id.*) On the wax paper would be a stamp, one of which was "El Che." (*Id.*) Roscoe identified the bags seized from Petitioner's closet as similar to bags he had bought from Lloyd. (D.I. 17-2 at 194) Lloyd's girlfriend also testified that when she secretly sold some of Lloyd's heroin, she did not hear of any complaints that the product was fake heroin. (D.I. 17-2 at 228) Another woman testified that she saw Petitioner with Lloyd and others at Lloyd's sister's house, where there was heroin on the table. (D.I. 17 at 19) She also knew Petitioner hung out with Lloyd daily. (D.I. 17 at 22)

The State presented the testimony of a police officer who recovered the heroin from a controlled buy from one of Lloyd's middlemen in September, 2014. (D.I. 17-2 at 96-97) The forensic chemist who tested that recovered heroin testified that the heroin in the 260 bags (20 bundles)[4] from that seizure weighed 3.028 grams. (D.I. 17-2. at 99-101) Using that weight, a detective then extrapolated during his testimony that the 50 bundles (650 bags) seized from Petitioner's closet would have weighed about seven-and-a-half grams. (D.I. 17 at 60, 132)

Viewing all of the aforementioned circumstantial evidence in the light most favorable to the State, a rational jury could have found beyond a reasonable doubt that Petitioner possessed more than five grams of heroin. Therefore, Petitioner has not shown that the Delaware Supreme Court

---

[4]A bundle usually consists of thirteen bags. (D.I. 17 at 3, 60; D.I. 17-2 at 193)

10

unreasonably applied *Jackson* in finding the evidence sufficient to sustain his conviction for aggravated possession of heroin; nor has he shown that the Delaware Supreme Court's factual findings were objectively unreasonable. Accordingly, the Court will deny Claim Two.

### C. Claims Three and Four: Procedurally Barred

In Claim Three, Petitioner appears to assert that the State failed to present sufficient evidence to convict him of second degree conspiracy. The record reveals that Petitioner did not exhaust state remedies for Claim Three because he did not present this argument to the Delaware Supreme Court on direct appeal. At this juncture, any attempt by Petitioner to raise Claim Three in a Rule 61 motion in order to then appeal any adverse decision to the Delaware Supreme Court would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1) and barred as procedurally defaulted under Delaware Superior Court Criminal Rule 61(i)(3). Since there is no indication that Rule 61(d)(2) and (i)(5)'s exceptions to the bars in Rule 61(i)(1) and (3) apply in this case,[5] any attempt to exhaust state remedies would be futile. Given this futility, the Court must treat Claim Three as technically exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claim absent a showing of cause and prejudice, or that a miscarriage of justice will result absent such review.

In Claim Four, Petitioner contends that the Superior Court erred in letting the conspiracy to commit racketeering charges go to the jury because the State failed to establish the existence of an "enterprise." Petitioner was acquitted of racketeering, so his argument about that charge is moot,

---

[5]Delaware Superior Court Criminal Rule 61(d)(2) and (i)(5) provide that the procedural bars to relief in Rule 61(i)(1), (2), (3), and (4) do not apply to a claim that the court lacked jurisdiction or if the petitioner pleads with particularity either that (1) new evidence exists that creates a strong inference that he is actually innocent or (2) a new rule of constitutional law, made retroactive on collateral review, applies to his case and renders his conviction invalid. *See* Del. Super. Ct. Cr. R. 61(d)(2) and (i)(5). Petitioner does not allege a valid claim of actual innocence, and he does not allege a lack of jurisdiction or that a new rule of constitutional law applies to his Claims.

11

except to the extent it is connected to his conspiracy to commit racketeering charge. The record reveals that Petitioner first raised Claim Four on direct appeal. As a result, the Delaware Supreme Court only reviewed the argument for plain error under Delaware Supreme Court Rule 8. *See* Del. Sup. Ct. R. 8 (claims not raised in trial court are reviewed only in interests of justice under Rule 8). By applying the procedural bar of Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1989), that its decision rested on state law grounds. Delaware Supreme Court Rule 8 is an independent and adequate state procedural rule precluding federal habeas review absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed. *See Campbell v. Burns*, 515 F.3d 172, 182 (3d Cir. 2008).

Petitioner has not provided any cause for his default of Claims Three and Four. In the absence of cause, the Court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine is inapplicable because Petitioner has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims Three and Four as procedurally barred.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.